18358

RICHLAND COUNTY DEPARTMENT OF PUBLIC WELFARE, Respondent, v. Patricia Ann Davis MICKENS, Appellant. *In re* Ollie William DAVIS, Neglected Child.

(142 S. E. (2d) 737)

*Owens T. Cobb, Jr., Esq.,* of Columbia, *for Appellant,*

*Messrs. Daniel R. McLeod, Attorney General,* and *E. N. Brandon, Assistant Atttorney General,* of Columbia, *for Respondent,*

June 11, 1965.

BUSSEY, Justice.

The appellant, a Negro girl, is the mother of the infant Ollie William Davis, an illegitimate child born on July 19, 1961, appellant being at that time thirteen years of age. In a proceeding commenced by respondent on January 31, 1964, pursuant to Section 31-51.1 *et seq.,* of the 1962 Code of Laws of South Carolina, the judge of the Juvenile Domestic Relations Court for Richland County judicially terminated the parental rights of the appellant to her child by order dated May 27, 1964, finding that said infant had been voluntarily abandoned for more than one year by appellant. On appeal to the Court of Common Pleas for Richland County, the order of the Juvenile-Domestic Relations Court for Rich-

land County was affirmed, and from this order of affirmance appellant perfected her appeal to this court.

The initial contention of appellant is that the said Juvenile-Domestic Relations Court did not have jurisdiction of the proceeding. If that court lacks jurisdiction, it follows that the other questions raised by the appeal will not need to be considered. It is conceded that the said court is an inferior court of limited jurisdiction created by statute. See provisions of Chapter 7, Title 15, 1962 Code, most of which were originally enacted in the year 1936. It is further conceded that any authority on the part of this court to exercise jurisdiction in the proceeding here involved must be found in some statute, granted either expressly or by necessary implication. *McCullough v. McCullough*, 242 S. C. 108, 130 S. E. (2d) 77; *Wright v. Alexander*, 230 S. C. 286, 95 S. E. (2d) 500.

Section 31-51.1 *et seq.* of the Code, pursuant to which this proceeding was brought, were enacted in 1961, but said sections do not confer any jurisdiction upon any particular court or courts, it simply being provided that a petition for termination of parental rights might be brought in any court of competent jurisdiction. Respondent does not contend that there is any statute which expressly confers upon the Juvenile-Domestic Relations Court of Richland County jurisdiction of such a proceeding.

While the order of the circuit court referred to numerous sections of Chapter 7, Title 15 of the Code in considering whether the Juvenile-Domestic Relations Court had jurisdiction, respondent apparently concedes that jurisdiction, if it exists, arises solely by necessary implication from the Code sections giving the court jurisdiction in adoption proceedings. Section 15-1171 empowers the children's division of the court to "grant orders for the adoption of" certain children, and Section 15-1222 confers upon the family court division of the said court concurrent jurisdiction with the circuit court with respect to the "custody and adoption of children".

The instant proceeding was commenced on the 31st day of January, 1964, and the jurisdictional question was considered by the court below and argued by counsel here in the light of the adoption law of this state as it existed prior to the 3rd day of February, 1964, when Act No. 703 of the 1964 Acts and Joint Resolutions (now Section 10-2587.1 *et seq.* of the 1964 Supplement to the Code) revising the adoption law of South Carolina was approved. Reference to the aforesaid Act No. 703 will show that it contained the following proviso:

"Provided, however, that the terms of this act shall not apply to any case which has been commenced or pending upon the effective date of this act."

We do not mean to intimate an opinion as to what effect, if any, the provisions of the said 1964 Act might otherwise have upon the issue before us, but simply point out these matters in explanation of the light in which the issue of jurisdiction is here considered.

Counsel for both parties apparently take the position that whether the statutes giving the court in question jurisdiction of adoption proceedings, by necessary implication, gave the said court jurisdiction of the present proceeding, is dependent in large measure on wheher or not under the existing law of this state a child could be adopted without the express consent of the natural parents. Both parties cite the decision of this court in *Driggers v. Jolley,* 219 S. C. 31, 64 S. E. (2d) 19. Reference is made also to an article in 9 S. C. L. Q. 210. It is contended by appellant that under the foregoing decision an adoption could not be granted by any court in South Carolina except with the consent of the natural parents, or possibly upon their default after a summons being served upon them.

Respondent argues that the decision in the *Diggers case* was limited to the question of jurisdiction of the Children's Court of Spartanburg County, and that any other court, whose jurisdiction is not so expressly limited, was empowered under the existing adoption law to follow the general

rule set forth in 2 Am. Jur. (2d), Adoptions, Section 24, to the effect that adoptions can be ordered without the consent of the natural parents when they, by their misconduct, such as desertion, failure to support, or ill treatment, have forfeited their rights as parents.

This court has never had occasion, apparently, to squarely consider or decide the question of whether a court of general original jurisdiction, or other court whose jurisdiction was not expressly limited by statute, in this state, had the power to grant an adoption on any ground or grounds, in the absence of consent to the natural parents, or against the will of such. The *Driggers case* did decide that the Children's Court of Spartanburg did not have such jurisdiction, in view of the language of the particular statute involved. The opinion there went on to point out that it was generally held that consent lay at the foundation of the statutes of adoption, but it is worthy of note that the court affirmed an order of the lower court referring the adoption action brought in the Court of Common Pleas for Berkeley County, without the consent of the parents, to a special referee. It is thus clear that this court did not hold that the Court of common Pleas, a court of original general jurisdiction, could not under any circumstances grant an adoption in the absence of consent of the natural parents.

While prior to the 1964 revision the provisions of our adoption law were rather meager, a review of many decisions from other jurisdictions would indicate that most states have for many years had adoption statutes which specifically provide the circumstances and conditions under which the courts can grant adoptions in the absence of the consent of the natural parents, or even against their will. Independently of such statutory provisions, there seems to be some authority for the proposition that the courts have the power to grant an adoption, which is in the best interest of the child, without the consent of natural parents who have been guilty of gross misconduct with respect to the child. For

instance, in 2 Am. Jur. (2d) 866, Adoption, Section 31, it is said:

"Even though the applicable statute does not, by its terms, refer to abandonment or desertion, the courts dispense with the requirement of consent in these circumstances, and when it is satisfactorily established that the parent has in fact abandoned or deserted the child, its adoption may be allowed not only without the consent of the parents, but even against their opposition."

We mention the foregoing solely to demonstrate that apparently this court, in the *Driggers v. Jolley case,* at least tacitly recognized that a court of general original jurisdiction, to-wit, the Court of Common Pleas, might well have the power, under our adoption statute, to grant an adoption without the consent of the natural parents in a case of misconduct on the part of the natural parents sufficiently aggravated to show clearly that the best interest of the child would be served by adoption. Nevertheless, the court did not squarely decide the question.

While the opinion in that case does not specifically say so, we think it probable the court had in mind that such question should not be decided in the absence of a full record showing all relevant facts, not only with respect to the natural parents, but also with respect to the adoptive parents, the prospective adoptive home, the infant itself, etc. Certainly, we in this case, which is not an adoption proceeding, should not attempt to pass upon whether, or under what circumstances, an adoption could have been granted under our prior adoption law, without the consent of the natural parents, in either the court of common pleas or any other court whose jurisdiction is not so expressly limited as was the jurisdiction of the Spartanburg Children's Court.

In the recent case of *McCullough v. Mcullough,* 242 S. C. 108, 130 S. E. (2d) 77, we quoted with approval the following language from 14 Am. Jur. 369, Courts, Section 169:

"Courts created by statute and not by the Constitution are tribunals of special and limited jurisdiction only. They can exercise only such powers as are directly conferred on them by legislative enactment and *such as may be incidentally necessary to the execution of those powers.* Therefore, unless authority for the exercise of jurisdiction in a given case can be found in the statutes, given either expressly or by necessary implication, their proceedings are void; for the rule is that such a court can only take cognizance of such matters as are *clearly within its jurisdiction."* (Emphasis added.)

Under the quoted rule, even if we assume that the Juvenile-Domestic Relations Court here had jurisdiction to terminate the rights of a natural parent in an adoption proceeding, over the objection of such parent, it would not follow by necessary implication that it had jurisdiction of this statutory proceeding, brought independently of an adoption proceeding, to terminate the rights of a natural parent. In an adoption proceeding, the court would have before it and be in position to weight not only the misconduct of the natural parents on the one hand, but the suitability of the adoptive parents, as well as all other relevant circumstances, and be in position to fully determine whether the welfare of the child would best be served by permanently severing the ties of the natural parents and granting the adoption.

The statutory proceedings here is a completely different matter. If the rights of the natural parent are terminated, an adoption is not effected but the child is simply made available for adoption. Whether it will ever be adopted, and if so, by whom, cannot be determined in the instant proceeding. If the rights of the natural parent are terminated, the child may or may not become a permanent ward of the state.

The record shows that the appellant is still quite young, and though her conduct, as reflected by the record, is certainly far from commendable, she may or may not reform.

She was married and living with her husband at the time of the hearing, and she and her husband may or may not be able to provide a suitable home for the child before its adoption is actually sought. We intimate no opinion as to the sufficiency of the evidence to support the finding of fact that the appellant had abandoned her child for a period of more than one year, which question we do not need to decide, but merely point these factors out to further demonstrate the differences between the nature of this proceeding and that of a proceeding for adoption.

In view of the essential differences in the nature of the two different proceedings, we do not think that the power to terminate the rights of a natural parent, in a separate statutory proceeding, is a power which is incidentally necessary to the exercise of the jurisdiction granted to the Juvenile-Domestic Relations Court with respect to adoption proceedings.

Aside from the essential differences in the nature of the two proceedings, we point out that for approximately seventy years, the courts of common pleas, and latterly other courts in this state, have had and exercise jurisdiction in adoption proceedings, without either the aid or necessity of this statutory proceeding or power which did not exist in any court in this state until 1961. This fact, we think, conclusively shows that the statutory power here sought to be exercised is not one which is incidentally necessary to the exercise of the court's jurisdiction with respect to adoption proceedings.

Finally, if the legislature, perchance, intended to give inferior courts of limited jurisdiction, such as the one here, jurisdiction over the proceedings created by the 1961 Act, such intention on its part is certainly not clearly shown, either by any express words, or otherwise. For these reasons, we conclude that the juvenile-Domestic Relations Court of Richland County was without jurisdiction of the instant proceeding.

Reversed.

TAYLOR, C. J., MOSS and LEWIS, JJ., and LIONEL K. LEGGE, Associate Justice, concur.